UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMANDA GRAHAM,

    Plaintiff,

v.                                      CASE NO. 8:13-CV-1856-T-24MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    This is an action for review of the administrative denial of disability insurance benefits (DIB), period of disability benefits, and supplemental security income (SSI). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff contends that the Administrative Law Judge (ALJ) failed to (1) properly evaluate the opinion of a consultative psychologist, (2) properly determine her mental residual functional capacity (RFC), and (3) incorporate her relevant limitations into hypothetical questions posed to the vocational expert (VE). After considering the parties' briefs and the administrative record in this case, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A.*    *Background*

    Claimant Amanda Graham was born on September 18, 1982. (R. 33) She has a ninth grade education and has past work experience as a cashier, nurse's aide, and small products assembler. (R. 33, 47-48) Claimant alleged disability commencing January 28, 2010. (R. 25) After a hearing, the ALJ found Claimant had the severe impairments of "obesity, headaches, a history of meningitis,

hypothyroidism, disorders of the spine, a bipolar disorder, an anxiety-related disorder, a borderline personality disorder, and attention deficit hyperactivity disorder (ADHD)." (R 27) Aided by the testimony of a vocational expert, the ALJ determined the Claimant was not disabled as she had the RFC to perform light, unskilled work with the following restrictions:

> The claimant can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and can frequently balance, stoop, kneel, crouch and crawl. She must avoid even moderate exposure to unprotected heights and machinery, and concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases and poor ventilation. The claimant retains the ability to understand, carry out, and remember simple, one-to-three step tasks, consistent with unskilled work. She can only occasionally interact with the general public and coworkers, and must have only occasional and routine interaction with a supervisor.

(R. 29) The ALJ also found that, with this RFC, the Claimant could perform her past relevant work as a small products assembler as well as other jobs at her RFC. (R. 33) The Appeals Council denied review. Plaintiff, who has exhausted her administrative remedies, filed this action.

   B.   *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a

2

"sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has

3

been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

Plaintiff argues the ALJ erred in three ways: (1) she did not properly consider the opinion of consultative psychologist Daniel Van Ingen, Ph.D., (2) she did not properly assess Plaintiff's mental RFC, and (3) she posed incomplete hypothetical questions to the VE. I discuss each of these arguments below (I address the second and third topics together) and conclude that the ALJ's decision is supported by substantial evidence.

    1.    *Consultative Psychologist's Opinion*

Plaintiff argues that the ALJ's decision to assign little weight to Dr. Van Ingen's opinion is unsupportable. Dr. Van Ingen is a state-retained psychologist who examined Plaintiff once, at the behest of the Commissioner, on April 15, 2010. (R. 324-28) The ALJ considered Dr. Van Ingen's opinion but assigned it little weight. (R. 32)

A court must give a treating physician's testimony substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). A one-time examiner, however, is not considered a treating source, and his opinion is not entitled to great weight. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding a one-time examiner is not considered a treating physician; therefore, his or her opinions are not entitled to deference); *see* 20 C.F.R. §§ 404.1502, 404.1527(c), 416.927. Instead, the ALJ is tasked with considering the opinions of one-time examiners together with the other medical evidence in making a disability determination. And the ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240.

Dr. Van Ingen noted Plaintiff's history of sexual abuse and psychiatric hospitalization.

Plaintiff reported to him that she was not on any medications but was receiving weekly in-home family therapy. (R. 324-25) Dr. Van Ingen observed that Plaintiff had fair insight, fair to good judgment, and fair recent and remote memory skills. (R. 326-27) He also estimated Plaintiff's intellectual functioning to be in the borderline to low average range and noted that her attention and concentration were limited. (R. 326) He concluded that Plaintiff "appears to be capable of understanding and following simple instructions and directions," but also that "[s]he appears to have significant difficulty learning new simple tasks" and "difficulty interacting and relating appropriately with others due to anxiety." (R. 327)

The ALJ gave this opinion "little weight, as it is inconsistent with Dr. [Van] Ingen's own objective findings on exam, and is overstated." (R. 32)  Dr. Van Ingen did not have a treating relationship with Plaintiff.  Plaintiff overlooks this; the cases Plaintiff cites address the ALJ's consideration of a treating physician's opinion (doc. 16 at 18).  The ALJ appropriately characterized Dr. Van Ingen's findings as inconsistent: He opined that Plaintiff could follow simple instructions, on the one hand, but would have a hard time learning simple tasks, on the other.  The ALJ also correctly noted that Plaintiff sought only sporadic mental health treatment and received a much higher GAF score (62) from Howard Goldman, M.D., a psychiatrist at Family Preservation Services of Florida who treated her in September 2011. (R. 32, 490-91) Two state examiners also opined that Plaintiff could follow simple instructions. (R. 374, 405) *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) (ALJ did not err in relying on opinions of non-examining physicians when they comport with those of treating physicians).  Claimant's treating physician, John Picken, M.D., did not note any functional limitations as a result of Plaintiff's impairments. He mainly refilled Plaintiff's prescriptions and urged her for at least six months to have lab work done.

(R. 484) Dr. Picken's records indicate that she failed the show up for appointments five times in one year. (R. 512) In short, there is nothing in his medical records to support further restrictions than those the ALJ recognized.

Finally, Plaintiff's emphasis on the medical source assessment form submitted by physician's assistant John DiVito is misplaced. Mr. DiVito checked a box indicating Plaintiff's limitations on completing a workday are "moderately severe." (R. 416) As the ALJ pointed out, Mr. DiVito is not an "acceptable medical source" under the social security regulations. 20 C.F.R. §§ 404.1513(a), 416.913. Although he can provide "insight into the severity of a claimant's impairments and how the impairments affect his ability to function, the Commissioner is not required to accept a conclusion from a non-acceptable medical source." *Cotton v. Comm'r of Soc. Sec.*, 3:09-cv-45-J-34MCR, 2010 WL 746445, at * 7 (M.D. Fla. Mar. 3, 2010). With this in mind – the internal inconsistency of Dr. Van Ingen's opinion, together with the contrary medical evidence – I find the ALJ's disregard of Dr. Van Ingen's opinion supported by substantial evidence.

### 2.   *Plaintiff's Mental RFC / Hypothetical Question*

Plaintiff's next argument consists of two related prongs: (1) Plaintiff's mental RFC, as assessed by the ALJ, is not supported by substantial evidence; and (2) the ALJ's hypothetical to the VE did not account for Plaintiff's limitations in concentration, persistence, and pace. The ALJ determined Plaintiff's mental RFC to be the following: "The claimant retains the ability to understand, carry out, and remember simple, one-to-three step tasks, consistent with unskilled work. She can only occasionally interact with the general public and coworkers, and must have only occasional and routine interaction with a supervisor." (R. 29) According to Plaintiff, this assessment does not account for the ALJ's finding that Plaintiff had "no more than moderate difficulties" with

6

concentration, persistence, and pace. (*Id.*)  The Commissioner, on the other hand, contends that the ALJ's decision to restrict Plaintiff to unskilled work adequately accounts for these difficulties.

Addressing the first part of Plaintiff's argument, courts have found an RFC finding of unskilled work insufficient to account for difficulties in concentration, persistence, or pace, unless the medical evidence clearly demonstrates otherwise. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011); *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 961 (11th Cir. 2010); *Millhouse v. Astrue*, No. 8:08-CV-378–T–TGW, 2009 WL 763740, at *2 (M.D. Fla. Mar. 23, 2009).  In *Millhouse*, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or pace and in social functioning, but determined these limitations only limited the plaintiff to unskilled work in the RFC. *Millhouse*, 2009 WL 763740, at *2. The court reversed and remanded, reasoning:

> Simply finding that the plaintiff had a mental limitation of unskilled work clearly does [not] [sic] constitute 'a more detailed assessment by itemizing various functions contained in the broad categories' of social functioning and concentration, persistence, or pace. Furthermore, moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work. 'Unskilled work' is defined as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.' 20 C.F.R. 416.968(a). It is not apparent to me that a person with moderate limitations in concentration, persistence, or pace could adequately perform all types of unskilled sedentary work.

*Id.* at *3–4.

Plaintiff's case can be distinguished from *Millhouse*.  Plaintiff's brief isolates the ALJ's statement that "when giving the claimant's testimony the full benefit of the doubt, the undersigned also finds that she has additional social limitations." (R. 33)  But the ALJ's analysis does not stop

there. He explains: "Specifically, the claimant retains the ability to understand, carry out, and remember simple, one-to-three step tasks, consistent with unskilled work. She can only occasionally interact with the general public and coworkers, and must have only occasional and routine interaction with a supervisor." (*Id.*) These limitations adequately account for Plaintiff's limitations in concentration, persistence, and pace, and are in accord with the medical evidence. Specifically, Dr. Goldman of Family Preservation Services treated Plaintiff in September 2011. He found that Plaintiff was oriented cognitively, that her cognitive function test was in the normal range, that her concentration was fair, and that her judgment and insight were also fair. (R. 491) A month earlier, one diagnostic impression had by a nurse practitioner working with Dr. Goldman was that Plaintiff "needs a job." (R. 509) This was the nurse practitioner's impression despite diagnosing Plaintiff with bipolar and assigning her a GAF of 45.

Additionally, no physician opined that Plaintiff's difficulties with concentration, persistence, and pace caused any functional limitations. Indeed, one state agency physician opined that Plaintiff "can understand and recall simple to moderately complex instructions" and "can persist at simple and routine tasks for a regular workday at an appropriate pace." (R. 374). Another state agency physician agreed with this analysis. (R. 405) The ALJ considered these opinions "consistent with the lack of objective mental health evidence of record, and the claimant's inconsistent allegations" (R. 33) and limited Plaintiff's RFC to only occasional interaction with a supervisor. The ALJ's decision comports with the requirements of *Winschel*, 631 F.3d at 1180-81.

This discussion necessarily leads to the second prong of Plaintiff's argument, that the hypothetical question the ALJ asked the VE did not account for Plaintiff's limitations with concentration, persistence, and pace. The ALJ must pose an accurate hypothetical that takes into

account all the claimant's impairments. *Wind v. Barnhart,* 133 F. App'x. 684, 694 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ's hypothetical posed to a VE must comprehensively describe the plaintiff's limitations. *Pendley*, 77 F.2d at 1563. This includes accounting for any limitations in concentration, persistence, or pace in the VE's hypothetical. *See Winschel,* at 1180-81; *Richter*, 379 F. App'x at 961; *Millhouse*, 2009 WL 763740, at *2. Typically, the ALJ cannot satisfy this obligation by restricting the hypothetical to simple, routine tasks or unskilled work. *Id.* Nevertheless, if the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite his limitations, limiting hypothetical questions to unskilled or simple tasks is sufficient to account for Plaintiff's limitations in maintaining concentration, persistence, or pace. *Winschel*, 631 F.3d at 1180; *Jarrett,* 422 F. App'x at 872.

The ALJ relied on VE testimony, as well as the medical evidence and Plaintiff's testimony, to determine that Plaintiff is capable of performing her past relevant work as a small products assembler, among other jobs at her RFC. (R. 33) The ALJ asked the VE a series of three questions, each building on the one before. For all of the questions, the ALJ asked the VE to assume that the hypothetical claimant had Plaintiff's physical RFC. In the first question, the ALJ posed the following restrictions: the claimant retains the ability to understand, carry out, and remember simple, one-to-three step tasks consistent with unskilled work with only occasional interaction with the public. (R. 66-67) The second hypothetical added the restriction of only occasional interaction with co-workers. (R. 67) And the third hypothetical added the restriction of only occasional and routine supervision by a supervisor. (*Id*.) To all of these hypothetical questions, the VE answered the claimant could perform Plaintiff's past relevant work, as well as other jobs. Contrary to Plaintiff's

argument, the ALJ was not required to include Dr. Van Ingen's or Mr. DiVito's opinions in the hypothetical, because the ALJ had properly rejected them. Because the hypotheticals incorporated Plaintiff's mental limitations, including her difficulties with concentration, persistence, and pace, they are supported by substantial evidence.

        D.      *Conclusion*

For the foregoing reasons, it is hereby

RECOMMENDED:

1. That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. That the Clerk is directed to enter judgment for the Commissioner.

IT IS SO REPORTED in Tampa, Florida on June 30 , 2014.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).